1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES CHATMAN, | CASE NO. 1:03-cv-06636-AWI-SMS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART |
| v. | |
| SERGEANT C. TYNER, et al., | (Docs. 102 and 125) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

_____/

**Findings and Recommendations on Defendants' Motions for Summary Judgment**

**I.     Procedural History**

Plaintiff Charles Chatman ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on November 20, 2003, and it is proceeding on Plaintiff's amended complaint, filed September 1, 2004, for relief under 42 U.S.C. § 1983 against defendants Winett, Vazquez, Fortson, Lundy, and Johnson for retaliation in violation of the First Amendment, and defendants Winett, Vazquez, Lundy, Traynham, Mack, Wells, Jimenez, Duran, Bowman, and Johnson for violation of the Eighth Amendment based on unconstitutional conditions of confinement.  (Doc. 11.)  The events at issue in this action occurred while Plaintiff was housed at the California Correctional Institution ("CCI") in Tehachapi, California.

On December 18, 2007, Defendants Vazquez, Winett, Fortson, Lundy, Johnson, Traynham, Mack, Wells, Jimenez, and Bowman filed a motion for summary judgment.  (Doc.

1

1   102.)  Plaintiff filed an opposition in two parts, on March 11, 2008, and March 17, 2008.[1]  (Docs.

2   108 & 109.)  These Defendants did not file a reply.  Defendant Duran filed a motion for summary

3   judgment on July 7, 2008.  (Doc. 125)  Plaintiff filed an opposition on December 24, 2008.

4   (Doc. 134.)  Defendant Duran filed a reply on January 12, 2009.  (Doc. 137.)

5   **II.     Summary Judgment Standard**

6           Summary judgment is appropriate when it is demonstrated that there exists no genuine

7   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

8   Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

9                    always bears the initial responsibility of informing the district court
10                   of the basis for its motion, and identifying those portions of "the
                     pleadings, depositions, answers to interrogatories, and admissions
                     on file, together with the affidavits, if any," which it believes
11                   demonstrate the absence of a genuine issue of material fact.

12   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

13   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

14   in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

15   file.'"  Id. Indeed, summary judgment should be entered, after adequate time for discovery and

16   upon motion, against a party who fails to make a showing sufficient to establish the existence of

17   an element essential to that party's case, and on which that party will bear the burden of proof at

18   trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

19   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

20   circumstance, summary judgment should be granted, "so long as whatever is before the district

21   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

22   satisfied."  Id. at 323.

23           If the moving party meets its initial responsibility, the burden then shifts to the opposing

24   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

25

26           [1] Plaintiff also filed one page entitled "Plaintiff's Objection to Defendant's [sic] Evidence" along with his
27   papers opposing the Motion for Summary Judgment filed by Defendants Vazquez, Winett, Lundy, Johnson, Fortson,
     Mack, Traynham, Bowman, Wells, and Jimenez.  However, while this page states that Plaintiff is objecting to
     Defendants' evidence, it fails to state the legal grounds upon which his objection(s) might be based.  Thus, Plaintiff's
28   objections are overruled.

1   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

2   existence of this factual dispute, the opposing party may not rely upon the denials of its

3   pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

4   admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

5   56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

6   contention is material, i.e., a fact that might affect the outcome of the suit under the governing

7   law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific

8   Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

9   the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool

10  v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  The parties bear the burden of

11  supporting their motions and oppositions with the papers they wish the Court to consider and/or

12  by specifically referencing any other portions of the record they wish the Court to consider.

13  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court

14  will not search the record for triable issues of fact.  Id.

15          Since they do not have the burden of persuasion at trial, Defendants may carry their

16  burden of production on summary judgment either by disproving an essential element of

17  Plaintiff's claims, or by showing that Plaintiff lacks sufficient evidence of an essential element to

18  carry his burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Nissan

19  Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc. 210 F.3d 1099, 1102 (9th Cir. 2000).  If

20  Defendants meet this burden, the burden will shift to Plaintiff, in his opposition, to establish that

21  a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

22  Radio Corp., 475 U.S. 574, 586 (1986).

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

## II.   Summary of Claims in Plaintiff's Amended Complaint[2]

### A.   First Amendment Retaliation Claim Against Defendants Vazquez, Winett, Lundy, Johnson, and Fortson

On December 9, 2002, Plaintiff, his cellmate, and eleven other inmates were removed from their cells for placement in administrative segregation ("ad-seg").  To justify Plaintiff's placement in ad-seg, Defendants Vazquez, Winett, Lundy, Johnson, and Fortson fabricated a lock-up order that falsely stated Plaintiff had been an active participant in a disturbance which occurred on December 6, 2002.  Plaintiff alleges that the sole reason he was placed in ad-seg was to retaliate against him for filing complaints and grievances about prison conditions.  Prior to the disturbance of December 6, Plaintiff was called to the office of Defendants Winett, Lundy, and Johnson on numerous occasions and threatened by them with reprisals for contacting government officials about prison conditions.  Plaintiff alleges that all of the other prisoners placed in ad-seg received disciplinary violations arising out of the December 6 disturbance, but he did not.  (Doc. 10, pg. 6.)

### B.   Eighth Amendment Claim Against Defendants  Winett, Vazquez, Lundy, and Johnson Arising From Exposure to Freezing Temperatures

On December 9, 2002, following their removal from their cells and prior to placement in ad-seg, Plaintiff and the other inmates, all of whom were in their boxer shorts, were forced to stand outside for more than thirty minutes in the freezing weather, wearing only boxer short underwear and no footwear, to wait for rectal x-rays to check for contraband.  (Id., pp. 5-6.) Plaintiff saw Defendants Vazquez, Winett, and Johnson nearby and told them of his medical

---

[2] Court document 10.  Variously throughout his opposing papers, Plaintiff appears to attempt to expand his claims against the named defendants to include conspiracies and deliberate indifference to his serious medical needs.  However, Plaintiff may not now expand the scope of this litigation via deposition testimony or his opposition to defendants' motion for summary judgment.  See Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).  Plaintiff's claims are confined to those screened and found cognizable by the Court.  (Doc. 11.)  Further, although Defendants move for summary judgment on Plaintiff's retaliation claim arising from placement in the flooded cell, the court did not find such a claim cognizable and declines to permit Defendants to expand the litigation to include such a claim at this juncture.  (Doc. 11.)  The amended complaint does not set forth sufficient facts to state a cognizable retaliation claim based on placement in the flooded cell, the parties were placed on notice of what the cognizable claims were in the screening order, and the deadline to amend the pleadings has passed.  (Doc. 53.) Therefore, the section in Defendants' motion for summary judgment relating to a retaliation claim arising from placement in the flooded cell will not be addressed by the court, and only the retaliation claim against Defendants Winett, Vazquez, Fortson, Lundy, and Johnson arising from Plaintiff's placement in administrative segregation will be addressed.

4

condition and "the fact of freezing to death," but was ignored.  (Id., pg. 6.)  Plaintiff alleges that Defendants Vazquez, Winett, Lundy, and Johnson were responsible for subjecting him to the freezing temperatures.

### C.   Eighth Amendment Claim Against Defendants Duran, Bowman, Mack, Traynham, Wells, and Jimenez Arising From Flooded Cell

On December 11, 2002, Defendant Mack moved Plaintiff from a bedless holding unit to an unoccupied cell that was flooded.  The cell did not have bed linens and Plaintiff did not have any footwear.  Plaintiff alleges the cell was flooded with a half inch of water due to a leak.  (Id., pp. 8-9.)

Plaintiff alleges each morning for more than two weeks, Defendants Bowman and Duran mopped the flooding from the front of his cell while laughing and tormenting him for being housed in a flooded cell.  Defendant Duran mopped up the fluid that flowed out of his cell on to the tier, three times per eight hour shift, for that same two weeks.  Plaintiff spoke to Defendants Traynham, Mack, Wells, and Jimenez on numerous occasions about having nose bleeds and the flu from being housed in a flooded cell with no footwear, but they refused to provide him with footwear and told him there were no unoccupied cells available for rehousing.  Plaintiff alleges he was housed in the cell for fifteen days and became very ill.  Plaintiff was moved to a different cell on December 26, 2002, by Defendant Bowman and provided with sneakers at that time by Correctional Officer Heath (not a named defendant).  (Id., pg. 9.)

## IV.   Defendants' Motions

### A.   First Amendment – Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-

68 (9th Cir. 2005).  The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).

### 1.    Defendants Vazquez, Winett, Lundy, Johnson, and Fortson

Defendants Winett, Vazquez, and Lundy contend that they did not participate in, and had no involvement with the decision to place Plaintiff in ad-seg subsequent to the disturbance. Defendants Winett, Vazquez, Lundy, Johnson, and Fortson contend that Plaintiff was  placed in ad-seg for legitimate correctional and institutional reasons and not in retaliation for his protected activities.

Defendant Vazquez presents evidence that, at the time in question, she was Chief Deputy Warden at CCI, administratively overseeing CCI policies and procedures, chairing Institutional Classification Committees, and making personnel evaluations and recommendations, such that it would have been unusual for her to make determinations on specific inmate searches and placements in ad-seg. (DUFs[3] 22, 24-25.)  While Defendant Vazquez reviewed inmate grievances, her usual job duties did not entail determining whether a specific inmate should be placed in ad-seg.  (DUF 25.)  Defendant Vazquez recalls receiving a grievance from Plaintiff regarding the conditions of confinement at CCI which she partially granted.  (DUF 26.) However, Defendant Vazquez was not motivated to retaliate against inmates whom filed grievances, rather, she welcomed information on CCI's conditions from all sources, including inmate grievances, as necessary information to carry out her duties to correct problems at the institution and monitor changing conditions.  (DUF 28.)

Defendant Winett presents evidence that, at the time in question, he was the Associate Warden at CCI, his job duties did not include making determinations on whether a specific inmate should initially be placed in ad-seg, and he was not part of the first review of Plaintiff's placement in ad-seg.  (DUF 32.)  Defendant Winett does not recall participating in custodial actions after an incident such as is at issue here.  (DUF 31.)  Making decisions on placement of

---

[3] See Defendants' [Winett, Wells, Vazquez, Traynham, Mack, Lundy, Johnson, Jimenez, Fortson, Duran, and Bowman] Statement of Undisputed Facts in Support of Motion for Summary Judgment (hereinafter "DUF"). (Doc. 102-2.)

inmates in ad-seg pending investigation for such incidents was not a normal part of his job

duties.  (DUF 32.)  Defendant Winett recalls receiving a few letters from administrative bodies

outside CCI regarding letters Plaintiff had mailed concerning the conditions at CCI.  Defendant

Winett explained to Plaintiff that his concerns could be addressed quicker if Plaintiff directed

them to staff at CCI.  (DUF 39.)  Defendant Winett was only involved in the review of Plaintiff's

retention in ad-seg at the end of December 2002, which was approved and continued pending

completion of the investigation.  (DUFs 34-37.)  In reaching this decision, Defendant Winett

considered only the safety of the institution, not the fact that Plaintiff had voiced concerns and/or

complained about the conditions of confinement at CCI.  (DUF 40.)  Defendant Winett believes

he would have been derelict in his duty if he had not elected to retain Plaintiff in ad-seg while

staff investigated reliable information that he was connected to a plot to assault staff.  (DUF 41.)

Defendant Lundy presents evidence that, at the time in question, he was CCI's Watch

Commander and was not involved in the decision to place Plaintiff in ad-seg (DUF 44-46).

Defendant Johnson presents no facts as to whether he had any involvement in Plaintiff's

placement in ad-seg.  However, Defendant Johnson presents evidence that, based on information

from the Investigative Services Unit ("ISU"), Defendant Johnson felt he would have been

derelict in his duty to preserve safety of inmates and staff not to, and that he had no choice but to,

place the inmates identified by the confidential informant, including Plaintiff, in ad-seg pending

further investigation.  (DUF 16.)  In deciding to segregate the implicated inmates, including

Plaintiff, Defendant Johnson only considered the safety of the institution and not whether the

implicated inmates had voiced concerns regarding CCI's conditions of confinement.  (DUF 18.)

Defendant Fortson submitted evidence that his only action in this case was that he

conducted an investigation of the December 6, 2002 incident and reported his findings to the

Investigative Services Unit.  (DUF 7-11.)  Prior to receiving information from a confidential

informant regarding the incident, Defendant Fortson was not familiar with Plaintiff and was

unaware whether he had filed prison grievances, lawsuits, or contacted public officials regarding

conditions of confinement at CCI.  (DUF 12.)

The Court finds this evidence sufficient to meet the burden: (1) of Defendants Winett,

7

1   Vazquez, and Lundy to argue that they did not participate in, and had no involvement in the

2   decision to place Plaintiff in ad-seg subsequent to the disturbance; and (2) of Defendants Winett,

3   Vazquez, Lundy, Johnson, and Fortson to show that Plaintiff was placed in ad-seg for legitimate

4   correctional and institutional reasons and not in retaliation for his protected activities.

5           Thus, the burden shifts to Plaintiff to demonstrate that a triable issue of fact exists.

6   Plaintiff submits evidence that, on a regular basis, he filed grievances and sent complaint letters

7   involving inhumane treatment of prisoners, official corruption, and general harassment against

8   the administration at Tehachapi to public officials and to prison administrative bodies.  (Doc.

9   108, pg 4.)  Plaintiff also submits evidence that, prior to the December 6, 2002 incident,

10  Defendants Winett, Johnson, and Lundy called him "into their office on separate occasions every

11  week to curse [him] and threaten [him] with retaliation," and that if he failed to cease focusing

12  attention on them, something bad could happen to Plaintiff in the future.  (Doc. 108, pp. 4-5.)

13  Plaintiff's evidence also shows that, on one occasion, Defendant Winett called Plaintiff into his

14  office, where Defendant Vazquez was present; when Plaintiff arrived, Defendant Winett was

15  throwing stacks of paper on the floor and Defendant Vazquez was shaking her head from side to

16  side and staring at Plaintiff; both Defendants Winett and Vazquez then lectured Plaintiff for over

17  an hour about how they could make his life miserable for having the audacity of summoning the

18  Grand Jury to their prison.  (Doc. 108, pp. 6 & 52.)  Plaintiff's evidence further shows that

19  Defendants Winett and Vazquez were sent courtesy copies of the results of various of Plaintiff's

20  inmate appeals.  (Doc. 108, pp. 31-33, 42, 46-47.)  After an investigator from the Office of the

21  Inspector General visited with Plaintiff, Defendant Winett summoned Plaintiff to his office and

22  threatened Plaintiff with placement in ad-seg if he continued harassing the administration.  (Doc.

23  108, pg. 5.)  Subsequently, when the December 6, 2002 incident occurred, all of the inmates who

24  refused to return to and lock in their cells received CDC-115 rules violation reports – except

25  Plaintiff.  (Doc. 108, pp. 9-10.)

26          While these statements show that Defendants Winett, Vazquez, and Lundy may have

27  harbored animus towards Plaintiff for his grievance and complaint filing activities, Plaintiff fails

28  to submit any evidence to refute the defense evidence that these three Defendants were not

1   involved in the decision to place Plaintiff in ad-seg.  Thus, Plaintiff fails to establish the

2   existence of a triable issue of material fact as to his claims against Defendants Winett, Vazquez,

3   and Lundy such that they are entitled to summary judgment.

4          However, as to Defendant Johnson, Plaintiff's evidence is such that a jury could find that

5   he harbored a retaliatory motive against Plaintiff, made the decision to place Plaintiff in ad-seg.,

6   and that Plaintiff may not have been placed in ad-seg for legitimate penological purposes.  (Doc.

7   108, pp. 4-5, 9-10, 12, 79.)  Thus, Plaintiff raises a triable issue of fact such that Defendant

8   Johnson is not entitled to summary judgment on this issue.

9          As to Defendant Fortson, the only evidence Plaintiff submits, is that Defendant Fortson

10  interviewed Plaintiff on one occasion regarding the December 6, 2002 incident.  (Doc. 108, pp.

11  10-11.)  Plaintiff admits that the interview was his only contact with Defendant Fortson, and that

12  he did not see or hear from, or about, Defendant Fortson before or after it.  Id.[4]  Defendant

13  Fortson establishes that Plaintiff lacks sufficient evidence of any retaliatory intent, and Plaintiff

14  fails to establish a triable issue of fact thereon.  Thus, Defendant Fortson is entitled to summary

15  judgment as to Plaintiff's allegations that he caused Plaintiff to be placed in ad-seg in retaliation

16  for engaging in protected First Amendment activities.

17         **B.    Eighth Amendment Claims**

18         "The Eighth Amendment's prohibition against cruel and unusual punishment protects

19  prisoners not only from inhumane methods of punishment but also from inhumane conditions of

20  confinement."  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  "[W]hile conditions

21  of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton

22  and unnecessary infliction of pain.'"  Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347

23  (1981)).  "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

24  Punishment Clause depends upon the claim at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8

25  (1992).  "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-

26

27         [4] Plaintiff contends that Defendant Fortson conspired with Defendants Vazquez, Winett, Johnson, and
    Lundy.  However, this case is not proceeding on any conspiracy claims (Doc. 11), and Plaintiff may not now expand

28  the scope of this litigation via his opposition to Defendants' Motion for Summary Judgment.  See Gilmore v. Gates,
    McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).

1  of-confinement claim." Id. at 9 (citation omitted). "Because routine discomfort is part of the

2  penalty that criminal offenders pay for their offenses against society, only those deprivations

3  denying the minimal civilized measure of life's necessities are sufficiently grave to form the

4  basis of an Eighth Amendment violation." Id. (quotations and citations omitted). Prison officials

5  may be held liable for violations under the Eighth Amendment only if they acted with "deliberate

6  indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.

7  1998).

8         The deliberate indifference standard involves an objective and a subjective prong. First,

9  the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v.

10  Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second,

11  the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . .

12  . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth

13  Amendment for denying humane conditions of confinement if he knows that inmates face a

14  substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.

15  Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked

16  knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to

17  the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to

18  establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152

19  F.3d at 1128.

20         "The Eighth Amendment guarantees adequate heating." Keenan v. Hall, 83 F.3d 1083,

21  1091 (9th Cir. 1996) citing Gillespie v. Civiletti, 629 F.2d 642 (9th Cir. 1980). "*Some* conditions

22  of confinement may establish an Eighth Amendment violation 'in combination' when each

23  would not do so alone, but only when they have a mutually enforcing effect that produces the

24  deprivation of a single, identifiable human need such as food, warmth, or exercise - for example,

25  a low cell temperature at night combined with a failure to issue blankets." (emphasis in original)

26  Wilson v. Seiter, 501 US 294, 304 (1991). Prison officials have a duty to ensure that prisoners

27  are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. See

28  Farmer, 511 U.S. at 832; Keenan v. Hall 83 F.3d 1083, 1089 (9th Cir. 1996); Johnson v. Lewis

1   217 F.3d 726, 731 (9th Cir. 2000); <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246 (9th Cir. 1982);

2   <u>Wright v. Rushen</u>, 642 F.2d 1129, 1132-33 (9th Cir. 1981); <u>Wolfish v. Levi</u>, 573 F.2d 118, 125

3   (2nd Cir. 1978).  Further, "[t]he denial of adequate clothing can inflict pain under the Eight

4   Amendment."  <u>Walker v. Sumner</u>, 14 F.3d 1415, 1421 (9th Cir. 1994) (citing <u>Hoptowit</u> 682 F.2d

5   at 1246) *abrogated in part on other grounds by* <u>Sandin v. Connor</u>, 515 U.S. 472 (1995).

6   Punishments "involv[ing] the unnecessary and wanton infliction of pain" are "repugnant to the

7   Eighth Amendment."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-103 (1976) (internal quotation marks

8   omitted).

### 1.   Claim Arising From Exposure to Freezing Temperatures Against Defendants Winett, Vazquez, Lundy, and Johnson

Defendants Winett, Vazquez, Lundy, and Johnson contend that they did not subject

Plaintiff to cruel and unusual conditions of confinement by requiring him to remain outdoors for

over thirty minutes, in inclement weather without sufficient clothing, before he was x-rayed.

Defendants Winett, Vazquez, Lundy, and Johnson submit evidence showing, that the

National Climatic Data indicates that, at 4:00 p.m. on the date in question, the temperature at CCI

was 51 degrees Fahrenheit.  (DUF 112.)  Defendants argue that they are entitled to summary

judgment as Plaintiff has not provided evidence that this temperature would be injurious to the

average person, or that it caused him to be injured in any way, and that, because Plaintiff alleges

that he was only subjected to these temperature for approximately one half hour, the conditions

complained of were temporary and thus not actionable per <u>Hutto v. Finney</u> 437 U.S. 678, 686-87

(1978).  (Doc. 102, pg. 13.)  The National Climatic Data submitted by these Defendants in

support of DUF 112 shows that 51 degrees Fahrenheit was the high on December 9, 2002 and

that the conditions that day were "windy."  (Doc. 102-5, pg. 2.)

The evidence submitted by these Defendants that the *high* temperature on December 9,

2002, was 51 degrees ignores both that the temperature to which Plaintiff was subjected at 8:00

in the evening may have been significantly cooler than the high reached that day, and whether the

"windy" conditions as noted would have caused a wind chill factor that may have caused further

cooling effects.  (<u>Id.</u>)  These Defendants also fail to address the amount of clothing which

Plaintiff was allowed to wear while exposed to the elements.  Further, the defense argument that,

1   per <u>Hutto</u>, Plaintiff has no claim due to the temporary time frame of his exposure to the elements,

2   fails to reckon with the holding by the Ninth Circuit Court of Appeals that "[t]he denial of

3   adequate clothing can inflict pain under the Eight Amendment."   <u>Walker</u> 14 F.3d 1415.

4          This being the case,  Defendants Winett, Vazquez, Lundy, and Johnson have not

5   disproved Plaintiff's allegations that he was denied adequate clothing so as to have pain inflicted

6   in violation of the Eighth Amendment.  <u>Walker</u> 14 F.3d 1415.  A triable issue of material fact

7   exists as to whether the inclement weather conditions Plaintiff allegedly was exposed to

8   constituted a violation of his Eighth Amendment rights.

9          Defendant Winett submits evidence that he did not observe inmates being kept outside in

10  inclement weather with limited clothing while waiting to take an x-ray examination, but if he

11  had, he would have made other arrangements.  (DUFs 42 & 43.)  Defendant Vazquez fails to

12  submit any evidence to address whether she had any knowledge of, or any involvement in,

13  Plaintiff being held outside in inclement weather in insufficient attire.  Defendant Johnson

14  submits evidence that he did not direct staff to permit the implicated inmates with limited

15  clothing to remain outdoors on December 9, 2002 while waiting to be x-rayed.  (DUF 19.)

16  Defendant Johnson submits evidence that he would never have ordered that inmates remain

17  outside in inclement weather with limited clothing while waiting to take an x-ray examination; he

18  did not observe any such occurrence, but if he had, he would have made other arrangements.

19  (DUFs 19-21.)  Defendant Johnson does not recall ordering the implicated inmates to be x-rayed,

20  but it would have been normal for him to have done so.  (DUF 48.)  Defendant Lundy submits

21  evidence that on December 9, 2002 his office was separate and apart from the physical location

22  of any of the five facilities he was the Watch Commander over, he monitored events and directed

23  the proper staff to respond to an emergency situation, but did not participate in the daily custodial

24  functioning such as the Facility Captain, Lieutenant, or Sergeant would, and he had no role in

25  directing Plaintiff to take an x-ray examination or determining the method in which that

26  examination was completed.  (DUFs 44, 45, 46.)  Defendants Winett, Vazquez, Lundy, and

27  Johnson argue that this evidence shows that none of them were aware of Plaintiff being subjected

28  to inclement weather in inadequate clothing.  (Doc. 102, pg. 12.)  This evidence meets the burden

1   of production for Defendants Winett, Vazquez, Lundy, and Johnson.

2        Thus, the burden shifts to Plaintiff to establish a triable issue of fact.  To this end,

3   Plaintiff submits a declaration that Defendants Winett, Vazquez, Lundy, and Johnson were

4   talking to one another within thirty feet from where he was waiting to be x-rayed in the inclement

5   weather in insufficient clothing and that they ignored Plaintiff's screams out to them that he was

6   freezing to death.  (Doc. 108, pp. 13-14.)[5]  This raises a triable issue of material fact as to

7   whether Defendants Winett, Vazquez, Lundy, and Johnson were aware of the conditions Plaintiff

8   allegedly was exposed to and were deliberately indifferent to Plaintiff being denied adequate

9   clothing so as to have unnecessarily and wantonly inflicted pain in violation of the Eight

10  Amendment.  Walker 14 F.3d 1415; and Estelle 429 U.S. at 102-103.  Thus, Defendants Winett,

11  Vazquez, Lundy, and Johnson are not entitled to summary judgment on the issue of whether they

12  violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to Plaintiff being

13  held in inclement weather with inadequate clothing.

         **2.    Claim Arising From Flooded Cell**

14

15            **a.    Defendants Mack, Traynham, Bowman, Wells, and Jimenez**

16       Defendants Mack, Traynham, Bowman, Wells, and Jimenez contend that they did not

17  violate Plaintiff's Eighth Amendment rights by permitting him to remain in a flooded cell, and

18  that Plaintiff did not develop nosebleeds and the flu from those conditions.

19       Defendants Mack, Traynham, Bowman, Wells, and Jimenez submit evidence showing

20  that they were not aware that Plaintiff was housed in a cell that was flooded with water in

21  December 2002, and if they ever observed an inmate housed in a cell that was flooded with water

22  to the point of being uninhabitable, they would have ensured that the inmate was transferred to a

23  new cell until the problem could be fixed.  (DUFs 68, 72, 81, 85, 89, 98, 102.)  Defendant

24  Jimenez could not have had any contact with Plaintiff as he was not assigned to work in the area

25  of Facility 4-B at the time Plaintiff claims he was housed in a flooded cell.  (DUFs 92-96.)  There

26  is also evidence that Plaintiff acknowledges that reparative efforts were made by correctional

27

28       [5] In his complaint, Plaintiff does not allege that Defendant Lundy was in the group who ignored his cries for help.  However, he did not allege that Defendant Lundy was not in that group.  (Doc. 10, pg. 6.)

1    staff to deal with the excessive water and that he was ultimately moved to another cell.  (DUFs

2    77, 103-107.)  Plaintiff was not provided footwear, bedding, or linen in the wet cell as he was on

3    contraband watch secondary to refusal of x-ray examination.  (DUF 54.)  Plaintiff received

4    towels once he was off contraband watch.  (DUF 105.)  Further, Defendants contend that there is

5    no evidence to show that Plaintiff developed nosebleeds and the flu from being housed in a

6    flooded cell since, while Plaintiff was seen by medical staff on multiple occasions in the weeks

7    following the period of December 11, 2002 through December 27, 2002, (due to being on a

8    hunger strike), there is no mention in the medical records that Plaintiff complained of flu

9    symptoms or nosebleeds.  (DUFs 108-111.)

10          Defendants Mack, Traynham, Bowman, Wells, and Jimenez have carried their burden of

11   production both on their contention that Plaintiff's cell condition did not pose a substantial risk

12   of serious harm to Plaintiff and on their contention that they were not deliberately indifferent to

13   the water in Plaintiff's cell.  The burden therefore shifts to Plaintiff to establish the existence of a

14   genuine issue of material fact as to Defendants Mack, Traynham, Bowman, Wells, and Jimenez

15   being deliberately indifferent to his situation.

16          Plaintiff meets his burden of showing that the flooding of his ad-seg cell posed a

17   substantial risk of serious harm to Plaintiff and that Defendants Mack, Traynham, Bowman,

18   Wells, and Jimenez were deliberately indifferent thereto.  Plaintiff presents evidence that at

19   approximately 8:30 p.m. on December 11, 2002, Defendant Mack moved Plaintiff to cell AB-

20   8A-107 in ad-seg, which was oozing a constant flow of water from underneath the door.  (Doc.

21   108, pg. 16.)  Despite Plaintiff's protests, Defendant Mack forced Plaintiff to walk in his socks

22   through the fluid into the flooded cell.  (Id., pp. 16-17.)  Defendant Mack told Plaintiff that there

23   was nothing he could do about placing Plaintiff in a flooded cell.  (Id.)  Since Plaintiff's ankles

24   were duct taped between his socks and jumper, he was unable to remove his wet socks and they

25   remained wet for forty-eight hours.  (Id., pg. 17.)  The next day, Officer Leisman (not a named

26   defendant) squeegeed Plaintiff's cell, but the flooding continued.  (Id.)  On December 13, 2002, a

27   maintenance man was called and stated that the valve was broken such that a new part must be

28   ordered.  (Id.)  That same day, Plaintiff was taken off contraband watch and given two sheets,

1    one blanket, one towel, one mattress, and one jumpsuit, but was not given anything extra to stop

2    the water flow within the cell, nor was he given a pair of sneakers or shower slippers.  (Id.,

3    pp.17-18.)  Defendant Bowman teased Plaintiff, made fun of the fact that Plaintiff had liquid

4    cascading out of his cell, refused to make any accommodations for Plaintiff in regards to the leak,

5    and mopped water up from in front of Plaintiff's cell at least three times a day.  (Id., pg. 18.)

6    Plaintiff confronted Defendant Traynham on four occasions regarding the flooding in his cell as

7    Defendant Traynham stood and watched the water pouring out of the bottom of Plaintiff's cell

8    door, but Defendant Traynham's only response was that there was nothing he could do as the

9    condition existed before Plaintiff was placed in that cell.  (Id.)  Defendant Traynham refused to

10   assist by obtaining Plaintiff a pair of footwear or providing Plaintiff with any means to repel the

11   leaking liquid.  (Id., pg. 19.)  Plaintiff saw Defendant Wells three times, and Defendant Jimenez

12   once, standing in front of Plaintiff's cell door.  When they were at his cell door, Plaintiff told

13   both Defendants Wells and Jimenez that the leak was continuing and showed them that the water

14   was coming "from along side the toilet," but they both told Plaintiff that they could not do

15   anything and that it was an old problem with the cells in ad-seg.  (Id.)  Plaintiff submitted

16   evidence that the leakage of toilet water flowed into his cell from the adjacent "chase," traversed

17   underneath the bed to the back of the cell, spread out in the middle of the cell, then exited the cell

18   on the opposite side, which kept one half of an inch of liquid inside the cell at all times.  (Id.)  On

19   December 20, 2002, Officer Dean (not a named defendant) scooped up over twenty gallons of

20   water from the chase, which only helped for the remainder of that day as the flooding came back

21   the following day.  (Id., pp. 19-20.)  Plaintiff also submits evidence that he advised Defendants

22   Mack, Traynham, Bowman, Wells, and Jimenez he was very sick and having nose bleeds and

23   flu-like symptoms and that all of these defendants told Plaintiff that his problems were beyond

24   their control.  (Id., pg. 20.)  Further, Plaintiff submits evidence that he submitted a number of

25   medical request forms, but was never summoned to the infirmary during the time he was housed

26   in the flooded cell. (Id.)  On December 26, 2002, Plaintiff was moved to another cell.  (Id.)  On

27   January 10, 2003, Plaintiff's medical records note that, among a plethora of other symptoms, he

28   complained of nose-bleeding for two weeks.  (Id., pp. 101-102.)  The Court notes that

1  Defendants Mack, Traynham, Bowman, Wells, and Jimenez failed to include, and/or otherwise
2  mention, these two pages of medical records amongst the medical records submitted in support
3  of their motion.

4        When taken in the light most favorable to Plaintiff as the non-moving party, his evidence
5  shows that the leak (emanating from the chase and flowing from the side of the toilet) caused his
6  conditions of confinement to be unsanitary. See Farmer, 511 U.S. at 832; Keenan 83 F.3d at
7  1089; Johnson 217 F.3d at 731; Hoptowit, 682 F.2d at 1246; Wright, 642 F.2d at 1132-33;
8  Wolfish, 573 F.2d at 125. Plaintiff's evidence also establishes that Defendants Mack, Traynham,
9  Bowman, Wells, and Jimenez were aware of this unsanitary condition and were deliberately
10  indifferent thereto. Plaintiff has met his burden of establishing triable issues of fact. Thus,
11  Defendants Mack, Traynham, Bowman, Wells, and Jimenez are not entitled to summary
12  judgment on Plaintiff's claims that they were aware that he was being housed in a flooded cell
13  and were deliberately indifferent thereto.

14                        **b.    Defendant Duran**

15        Defendant Duran contends that there is no evidence that he was deliberately indifferent to
16  Plaintiff's cell condition, that Plaintiff's cell condition posed a substantial risk of serious harm to
17  Plaintiff, nor that Plaintiff suffered serious harm.

18        Defendant Duran submits evidence that he and another officer placed Plaintiff in a
19  temporary holding cell until the water could be squeegeed to clean Plaintiff's cell. (DDUFs 16,
20  17.) There is evidence that correctional staff called maintenance personnel to attempt to fix the
21  leak in Plaintiff's cell. (DDUF 18.) There is also evidence that, once the water was squeegeed
22  out of Plaintiff's cell, Plaintiff was returned to his cell. (DDUF 20.)

23        Defendant Duran has not carried his burden of production on his contention that
24  Plaintiff's cell condition did not pose a substantial risk of serious harm to Plaintiff, or that
25  Plaintiff did not suffer serious harm from remaining in a flooded cell. However, Defendant
26  Duran has carried his burden of production on summary judgment by disproving an essential
27  element of Plaintiff's Eight Amendment claim against him for being housed in a flooded cell as
28  he has shown that he was not deliberately indifferent to the water in Plaintiff's cell. The burden

1    therefore shifts to Plaintiff to establish that a genuine issue of material fact as to Defendant

2    Duran's deliberate indifference actually exists.

3         There is no evidentiary dispute that Defendant Duran did not cause the leak that flooded

4    the ad-seg cell that Plaintiff was housed in, nor did Defendant Duran initially place Plaintiff in

5    that cell.  However, Plaintiff's evidence is sufficient for a reasonable jury to find that Defendant

6    Duran was aware of the leak, made only one effort to remove the fluid despite the continuing

7    leak, and took no steps to see that the source of the leak was repaired, to have Plaintiff moved to

8    another cell, or to provide Plaintiff with means to remedy the situation on his own (even after he

9    was no longer under contraband watch).  Plaintiff submits admissible evidence from which a

10   reasonable jury could find that, based on Plaintiff's observations, Defendant Duran knew the

11   leak/flooding in Plaintiff's cell was an ongoing problem as he mopped and squeegeed water

12   which came from Plaintiff's cell on the floor of the tier three times per eight hour shift for two

13   weeks, and, when Plaintiff showed Defendant Duran the water in his cell and complained of

14   being sick, Defendant Duran indicated there was nothing he could do about it with a broad smile.

15   (Doc. 134, pg. 22.)  Plaintiff further contends that, between December 11, 2002 and December

16   26, 2002 (after he was off contraband watch), Defendant Duran did not summon maintenance

17   staff, medical personnel, issue Plaintiff cleaning supplies, extra linen, footwear, recommend

18   reassignment, or make any attempt to contain the cascade of water in Plaintiff's cell.  Id.

19   Defendant Duran provides evidence that he squeegeed the water from Plaintiff's cell on one

20   occasion; once the water was squeegeed out of Plaintiff's cell, Plaintiff was returned to his cell;

21   he does not recall receiving any further complaints from Plaintiff about water in his cell; and

22   correctional staff called maintenance personnel to attempt to fix the leak in Plaintiff's cell.

23   (DDUFs 16-18, 20-21.)  However, none of this evidence shows that Defendant Duran was not

24   aware that the flooding in Plaintiff's cell continued, that he believed the flooding issue had been

25   resolved, or that he was not aware it was not rectified during the time Plaintiff was held in the

26   cell.  Further, while Defendant Duran submitted evidence that he has never permitted an inmate

27   to remain in a cell when he knew the cell had "standing" water, or to remain in a cell with

28   "standing" water, (DDUFs 22-24) when Plaintiff is given every reasonable inference, it appears

1  that the water which flooded his cell was not standing water, but rather was flowing water which

2  emanated from a continuing leak which "flowed" out beyond Plaintiff's cell onto the floor of the

3  tier. (Doc. 134, pg. 21.) Defendant Duran's declaration that he has never knowingly permitted

4  an inmate to remain in a cell with "standing" water does not adequately address Plaintiff's

5  allegations, and opposing evidence, which infer that the water of he complains was not

6  "standing," but flowing.

7       Further, Defendant Duran contends that the water Plaintiff alleges was in his cell posed

8  neither a "substantial risk of serious harm," nor an "excessive risk to inmate health and safety" as

9  required by Farmer 511 U.S. at 837 & 847.  (Doc. 125-2, pg. 7.)  However, Plaintiff presents

10  evidence that the water which flowed half an inch deep through his cell was "toilet water from

11  the adjacent chase." (Doc. 134, pg. 20.)  A reasonable fact finder could conclude that toilet water

12  from an adjacent chase, running half an inch deep across the floor of Plaintiff's ad-seg cell is

13  unsanitary, and could conceivably cause the floor of the cell to pose a serious slipping hazzard so

14  as to have violated Plaintiff's Eighth Amendment rights.  Hoptowit 682 F.2d at 1246.

15       Defendant Duran asserts that "[w]eeks after the water in [Plaintiff's] cell, he caught a

16  cold and had a nosebleed."  (DDUF 26.)  However, the excerpt from Plaintiff's deposition upon

17  which Defendant Duran bases this assertion does not support this rendition of events.  Rather, in

18  his deposition, Plaintiff states that as a result of being in the flooded cell his nose started bleeding

19  and he caught a cold, that he had to file 602s to obtain medical attention, and was not able to see

20  a doctor until weeks later. (Doc. 125-4, pg. 7.)  Further, Plaintiff presents evidence via a medical

21  report dated January 10, 2003, that when seen by medical personnel, he complained of his nose

22  bleeding for two weeks, and a plethora of other symptoms.  (Doc. 134, pp. 28-29.)  Thus, a

23  reasonable fact finder could conclude that, at his first opportunity to receive medical care,

24  Plaintiff complained of the symptoms he alleges were caused by being housed in a flooded cell.

25       Defendant Duran objects to admission of Plaintiff's opinion that being housed in a

26  flooded cell for fifteen days caused him to suffer from continuous nose bleeds, headaches, chest

27  pains, runny nose, back pains, watery eyes, and blurred vision.  (Doc. 137, pp. 2- 3.)  Defendant

28  Duran objects to Plaintiff's opinions on the grounds that Plaintiff is not a medical professional

1  and therefore is not qualified to provide opinions as to the cause of medical symptoms or

2  conditions. (Doc. 137 pp. 2-3.)  Plaintiff presents no evidence as to his being medically trained,

3  and thus is not qualified to opine whether any conditions of his confinement caused medical

4  sequela. Fed. R. Ev. 702.  Therefore, to the extent that paragraph 17 of Plaintiff's declaration

5  addresses medical causation of his symptoms, it is excluded.

6        Defendant Duran also requests that Plaintiff's Exhibit A be excluded as it "contains

7  portions of unauthenticated medical records (Fed. R. Ev. 901 & 902). . . ." (Doc. 137, pg. 2.)

8  The Court has found that other District Courts have overruled such technical and/or procedural

9  objections.  See Tabarez v. Butler 2008 WL 564821; Burch v. Regents of the University of

10  California, 433 F.Supp.2d 1110, 1118-24 (E.D.Cal.2006).  This Court concurs with the analysis

11  of both the Tabarez and Burch Courts.  "Plaintiff's evidence and Defendants' objections cannot

12  be divorced from the nature of this proceeding, i.e., summary judgment, in which Defendants are

13  the moving parties."  Tabarez at pg. 7 (citing Burch, 433 F.Supp.2d at 1118-24).  The records and

14  affidavits in support of a motion for summary judgment  "shall set forth such facts as would be

15  admissible in evidence ...."  Fed. R. Civ. P. 56(e).  A party's evidence submitted to oppose a

16  motion for summary judgment need not be in a form that would be admissible at trial.  See

17  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Rather, the Court's attention is to be

18  directed to the admissibility of the contents of the evidence.  Id.  "[O]bjections to the form in

19  which the evidence is presented are particularly misguided where, as here, they target the

20  non-moving party's evidence."  Burch, 433 F.Supp.2d at 1119.  "Accordingly, as long as a party

21  submits evidence which, regardless of its form, may be admissible at trial, it may be considered

22  on summary judgment."  Tabarez at pg. 7 (citing Burch 433 F.Supp.2d at 1120 (citing Fraser v.

23  Goodale, 342 F.3d 1032, 1036-37 (9th Cir.2003)).

24        On summary judgment, the party relying on affidavits and records must lay a proper

25  foundation.  Beyne v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1182 (9th Cir.1988).  However,

26  "whether the authentication requirement should be applied to bar evidence when its authenticity

27  is not actually disputed is, . . . , questionable."  Burch, 433 F.Supp.2d at 1120.  As in Tabarez,

28  since Defendant Duran does not explain the basis for his authentication objection to Plaintiff's

1  documents, his general objections are particularly suspect because the documents in question

2  would have originated within the prison system.  Also, the Court notes that on March 11, 2008,

3  prior to Defendant Duran filing his motion (on July 7, 2008), Plaintiff submitted the same two

4  paged physician's progress notes in opposition to the motion for summary judgment filed by all

5  of the other named Defendants.  (Doc. 108, pp. 101-102.)  Thus, Defendant Duran had ample

6  opportunity to unearth and present any valid basis for contesting the authenticity of the

7  physician's progress notes, if such basis exists.  Further, the other named Defendants, via counsel

8  from the office of the Attorney General for the State of California, did not object to these

9  documents, or raise any issue as to their authenticity.  "[W]here the objecting party does not

10  contest the authenticity of the evidence submitted, but nevertheless makes an evidentiary

11  objection based on purely procedural grounds," the Court should consider the evidence.  Tabarez

12  at pg. 8 citing Burch, 433 F.Supp.2d at 1120.  For these reasons, Defendant Duran's objection for

13  lack of authentication is overruled.

14      In his reply, Defendant Duran argues that, assuming his objections as to Plaintiff's

15  evidence of resulting medical conditions and medical records are sustained, he is entitled to

16  summary judgment since there is no admissible evidence that Duran's conduct caused Plaintiff to

17  suffer serious harm, citing Farmer, 511 U.S. at 847.  (Doc. 137, pp. 2-3.)  This argument is

18  without merit, both since his objections were not fully sustained and the substantive law in pin

19  cite from Farmer, which Defendant Duran references, does not require that an inmate actually

20  suffer a serious harm for a prison official to be liable under the Eighth Amendment for denying

21  humane conditions of confinement.  The Eighth Amendment "requires that inmates be furnished

22  with the basic human needs, [which include sanitation and] 'reasonable safety.'  It is 'cruel and

23  unusual punishment to hold convicted criminals in unsafe conditions.'  It would be odd to deny

24  an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison

25  on the ground that nothing yet had happened to them.  The Courts of Appeals have plainly

26  recognized that a remedy for unsafe conditions need not await a tragic event. . . . [A] prisoner

27  need not wait until he is actually assaulted [and/or therefore harmed] before obtaining relief."

28  Helling v. McKinney 509 U.S. 25, 33-34 (1993) (citations omitted).  See also Rhodes v.

1   Chapman, 452 U.S. 337, 352, n. 17 (1981) citing Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974)

2   (held that inmates were entitled to relief under the Eighth Amendment when they proved threats

3   to personal safety from exposed electrical wiring, deficient firefighting measures, and the

4   mingling of inmates with serious contagious diseases with other prison inmates).  Thus, Plaintiff

5   need not prove that he has sustained harm from unsanitary and/or unsafe conditions in order for

6   prison officials to be liable under the Eight Amendment for causing him to be exposed to

7   unsanitary conditions of confinement.

8        Since Plaintiff raises triable issues of fact as to the unsanitary nature of the conditions of

9   his confinement, via the flooded cell, and Defendant Duran's deliberate indifference thereto,

10   Defendant Duran's motion for summary judgment should be denied.

11       **C.**   **Qualified Immunity**

12       All Defendants move for summary judgment based on qualified immunity.

13       Government officials enjoy qualified immunity from civil damages unless their conduct

14   violates "clearly established statutory or constitutional rights of which a reasonable person would

15   have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity analysis

16   entails a three-step inquiry.  See, e.g., Saucier v. Katz, 533 U.S. 194, 201-205 (2001); but see

17   Pearson v. Callahan, No. 07-751, slip op. 13 (U.S. Jan. 21, 2009) ;2009 U.S. Lexis 591, 23; 2009

18   WL 128768 (holding that Saucier analysis should not be regarded as mandatory).[6]  In ruling upon

19   the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to

20   the party asserting the injury, the facts alleged show the defendant's conduct violated a

21   constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be

22   made out, the next step is to ask whether the right was clearly established. Id.  The inquiry "must

23   be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."

24   Saucier v. Katz, 533 U.S. 194, 201 (2002).  "[T]he right the official is alleged to have violated

25   must have been 'clearly established' in a more particularized, and hence more relevant, sense:

26

27       [6] Under Pearson, the Court has discretion to avoid the first prong of the Saucier inquiry if it appears that the

28   constitutional right at issue is not clearly established.  Because Plaintiff's allegations set forth a violation of a clearly
established constitutional right, the Court adheres to the Saucier framework in deciding Defendants' motion.

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).

In resolving the issue of qualified immunity, the evidence must be viewed in the light most favorable to Plaintiff and resolve all material factual disputes in favor of Plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). As previously discussed at length, Plaintiff has presented evidence that his First Amendment rights were violated by Defendants, Winett, Vazquez, Lundy, and Johnson when he was placed in ad-seg for retaliatory purposes, and by Defendants, Bowman, Wells, Jimenez, and Duran when he was placed and forced to remain in a flooded cell for retaliatory purposes; and that his rights under the Eighth Amendment were violated by Defendants, Winett, Vazquez, Lundy, and Johnson for subjecting Plaintiff to inclement weather with insufficient clothing, and by Defendants, Bowman, Mack, Traynham, Wells, Jimenez, and Duran for causing Plaintiff to remain in a flooded cell.

At the time of the incidents in December of 2002, the law was "sufficiently clear that a reasonable official would understand that what he is doing violates that right," Saucier, 533 U.S. at 202 (citation omitted). Defendants make no argument(s) to the contrary. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo, 778 F.2d at 532; see also Valandingham 866 F.2d 1135; Pratt v. Rowland, 65 F.3d at 807. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. See Farmer, 511 U.S. at 832; Keenan 83 F.3d at 1089; Johnson 217 F.3d at 731; Hoptowit v. Ray, 682 F.2d at 1246; Wright v. Rushen, 642 F.2d at 1132-33; Wolfish v. Levi, 573 F.2d at 125. Further, "[t]he denial of adequate clothing can inflict pain under the Eight Amendment." Walker 14 F.3d at 1421 (citing Hoptowit 682 F.2d at 1246) abrogated in part on other grounds by Sandin, 515 U.S. 472.

Moreover, where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. See Lolli v. County of Orange 351 F.3d 410, 421-22 (9th Cir. 2003); see also Santos v. Gates, 287 F.3d 846, 855 n. 12 (9th Cir.2002) (declining to grant qualified immunity "because whether the officers may be said

1   to have made a 'reasonable mistake' of fact or law, may depend upon the jury's resolution of

2   disputed facts and the inferences it draws therefrom" (citation omitted)); Martinez v. Stanford,

3   323 F.3d 1178, 1184-85 (9th Cir.2003) (the "facts in dispute bearing on the question of qualified

4   immunity" made summary judgment on that ground inappropriate).  Thus, if Plaintiff's version

5   of the facts ultimately prevails, there is a reasonable likelihood that Defendants would not be

6   entitled to qualified immun ity.  Plaintiff has identified factual disputes (as to whether his First

7   Amendment rights were violated by Defendants, Winett, Vazquez, Lundy, and Johnson when he

8   was placed in ad-seg for retaliatory purposes, and by Defendants, Bowman, Wells, Jimenez, and

9   Duran when he was placed and forced to remain in a flooded cell for retaliatory purposes; and

10  whether his rights under the Eighth Amendment were violated by Defendants, Winett, Vazquez,

11  Lundy, and Johnson for subjecting Plaintiff to inclement weather with insufficient clothing, and

12  by Defendants, Bowman, Mack, Traynham, Wells, Jimenez, and Duran for causing Plaintiff to

13  remain in a flooded cell) such that these Defendants are not entitled to summary judgment on

14  these claims by Plaintiff due to the existence of triable issues of fact.  Therefore, these same

15  Defendants are also not entitled to summary judgment on these claims based upon qualified

16  immunity.

17  **V.      Conclusion and Recommendation**

18          For the reasons set forth herein, it is HEREBY RECOMMENDED that:

19  1.      Defendants' Motion for Summary Judgment, filed December 18, 2007 by

20          Defendants Winett, Vazquez, Fortson, Lundy, Johnson, Traynham, Mack, Wells,

21          Jimenez, and Bowman, be granted in part and denied in part as follows:

22                  a.      granted as to Plaintiff's claims against Defendants Fortson, Winett,

23                          Vazquez, and Lundy for retaliating against Plaintiff via his

24                          placement in ad-seg for engaging in protected First Amendment

25                          activities;

26                  b.      denied as to Plaintiff's claims against Defendant Johnson for

27                          retaliating against Plaintiff via his placement in ad-seg for

28                          engaging in protected First Amendment activities;

1        c.    denied as to Plaintiff's claims against Defendants Winett, Vazquez,

2                Lundy, and Johnson for violating Plaintiff's Eighth Amendment

3                rights based on claims resulting from Plaintiff being exposed to

4                inclement temperatures;

5        d.    denied as to Plaintiff's claims against Defendants Bowman, Mack,

6                Traynham, Wells, and Jimenez for violating Plaintiff's Eighth

7                Amendment rights based on claims resulting from Plaintiff being

8                placed and housed in a flooded cell;

9    2.    Defendant's Motion for Summary Judgment, filed July 7, 2008 by Defendant

10        Duran, be denied in its entirety; and

11    3.    Defendants' Motions for Summary Judgment on Qualified Immunity grounds (by

12        Defendants Winett, Vazquez, Fortson, Lundy, Johnson, Traynham, Mack, Wells,

13        Jimenez, Bowman, and Duran) be denied.

14    These Findings and Recommendations will be submitted to the United States District

15 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

16 **thirty (30) days** after being served with these Findings and Recommendations, the parties may

17 file written objections with the court.  The document should be captioned "Objections to

18 Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

19 objections within the specified time may waive the right to appeal the District Court's order.

20 <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21

22 IT IS SO ORDERED.

23 **Dated:**   **February 26, 2009**          **/s/ Sandra M. Snyder**

                              UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28